JS 44   (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
ALLAN ZABACK, BRENT GARRETT, JAMES JONES, RANDY ROBBIE, BRITTANY FUNK, individually and on behalf of all others similarly situated

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael M. Weinkowitz, Esquire, Levin Sedran & Berman LLP, 510 Walnut Street, Suite 500, Philadelphia, PA  19106; (215) 592-1500

**DEFENDANTS**

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
       Plaintiff

☐ 2  U.S. Government
       Defendant

☐ 3  Federal Question
       *(U.S. Government Not a Party)*

☒ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                                        Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☒ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☒ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | Exchange |
| | Medical Malpractice | | Leave Act | | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1  Original
       Proceeding
☐ 2  Removed from
       State Court
☐ 3  Remanded from
       Appellate Court
☐ 4  Reinstated or
       Reopened
☐ 5  Transferred from
       Another District
       *(specify)*
☐ 6  Multidistrict
       Litigation -
       Transfer
☐ 8  Multidistrict
       Litigation -
       Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332(d)(2)
Brief description of cause:
Plaintiff is bringing a class action on behalf of consumers who purchased 2015-2018 Subaru Foresters

**VII. REQUESTED IN
COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION
   UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

**VIII. RELATED CASE(S)
IF ANY**   *(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
03/16/2020
SIGNATURE OF ATTORNEY OF RECORD
/s/ Michael M. Weinkowitz

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of New Jersey

| | |
|---|---|
| ALLAN ZABACK,  et al., individually and on behalf of all others similarly situated | ) ) ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No. |
| SUBARU OF AMERICA, INC. | ) ) |
| *Defendant* | ) ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Subaru of America, Inc.
One Subaru Drive
Camden, NJ  08103

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Michael M. Weinkowitz, Esquire
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA  19106

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____03/16/2020_____          _____
                                                             *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                              *Server's signature*

                                        _____
                                              *Printed name and title*

                                        _____
                                              *Server's address*

Additional information regarding attempted service, etc:

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALLAN ZABACK,  BRENT GARRETT, JAMES JONES,  RANDY ROBBIE, BRITTANY FUNK,  individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUBARU OF AMERICA, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Allan Zaback, Brent Garrett, James Jones, Randy Robbie, and Brittany Funk ("Plaintiffs") on behalf of themselves and all other similarly situated, bring this class action against Defendant, Subaru of America, Inc. ("Subaru" or "Defendant") for breach of warranty, fraud, unjust enrichment, and unfair and deceptive trade practices arising from the defective design and manufacture of 2017-2019 Subaru Foresters and Outbacks ("Class Vehicles") which causes the windshields to frequently, easily, and spontaneously chip, crack, or shatter ("Defect"). Plaintiffs allege the following based on personal knowledge as to their own acts and on the investigation conducted by counsel as to all other allegations:

### JURISDICTION AND VENUE

1.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 Class members. This

1

Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

2.      This Court has general personal jurisdiction over Defendant because Defendant's principal place of business is in New Jersey.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of New Jersey.

**PARTIES**

4.      Plaintiff Allan Zaback is a citizen and resident of Wilmington, Delaware.

5.      Plaintiff Brent Garrett is a citizen and resident of Louisville, Kentucky.

6.      Plaintiff James Jones is a citizen and resident of Durham, North Carolina.

7.      Plaintiff Randy Robbie is a citizen and resident of Chicago, Illinois.

8.      Plaintiff Brittany Funk is a citizen and resident of Chesterton, Indiana.

9.      Defendant Subaru of America, Inc. is a Delaware corporation with a principal place of business in Camden, New Jersey. Subaru of America, Inc. designs, markets, and sells vehicles, including the Class Vehicles, throughout the United States. Subaru of America, Inc. is a subsidiary and the United States distributor of Subaru Corporation, a Japanese corporation.

**PLAINTIFFS' EXPERIENCES**

**Allan Zaback**

10.      Plaintiff Zaback, a resident of Delaware, purchased a new 2019 Subaru Forester.

11.      Plaintiff's Class Vehicle was designed, advertised, marketed, offered for sale, and sold by Defendant.

12.      Mr. Zaback purchased his Class Vehicle without any knowledge of the Defect.

2

13.     Mr. Zaback exercised reasonable care and followed all safety, maintenance, and operating instructions with regard to his Class Vehicle.

14.     Plaintiff's first cracked windshield occurred at 3,000 miles from the windshield's contact with a small stone or gravel on the road.

15.     The cracked windshield was not covered under his vehicle's warranty.

16.     Mr. Zaback paid out-of-pocket to his insurance company a deductible of $500 to replace the windshield.

17.     Plaintiff's windshield cracked for a second time at 12,900 miles from the windshield's contact with a small stone or gravel on the road.

18.     The cracked windshield was not covered under his vehicle's warranty.

19.     Mr. Zaback again paid out-of-pocket to his insurance company a deductible of $500 to replace the windshield.

20.     Mr. Zaback paid out-of-pocket for the replacement of two windshields.  He has never received a reimbursement from Subaru.

21.     Had Mr. Zaback known of the Defect at the time of sale, he would not have purchased the vehicle or paid less for it to account for the defect.

**Brent Garrett**

22.     Plaintiff Garrett, a resident of Kentucky, purchased a new 2019 Subaru Outback in North Carolina in July 2019.

23.     Mr. Garrett's Class Vehicle was designed, advertised, marketed, offered for sale, and sold by Defendant.

24.     Plaintiff purchased his Class Vehicle without any knowledge of the Defect.

3

25.     Mr. Garrett exercised reasonable care and followed all safety, maintenance, and operating instructions with regard to his Class Vehicle.

26.     Plaintiff's first cracked windshield occurred at 1,500 miles from the windshield's contact with a small stone that quickly produced a crack across the windshield.

27.     The cracked windshield was partly covered by his vehicle's warranty, but Mr. Garrett paid out-of-pocket a $100 deductible for the first replacement.

28.     Less than two months later, Plaintiff Garrett suffered his third cracked windshield.

29.     Mr. Garrett has paid out-of-pocket for three windshield replacements.  He has never received a reimbursement from Subaru.

30.     Had Mr. Garrett known of the Defect at the time of sale, he would not have purchased the vehicle or paid less for it to account for the defect.

**James Jones**

31.     Plaintiff Jones, a resident of North Carolina, purchased a new 2017 Subaru Outback.

32.     Plaintiff's Class Vehicle was designed, advertised, marketed, offered for sale, and sold by Defendant.

33.     Plaintiff purchased his Class Vehicle without any knowledge of the Defect.

34.     Mr. Jones exercised reasonable care and followed all safety, maintenance, and operating instructions with regard to his Class Vehicle.

35.     Plaintiff's windshield spontaneously cracked at 6,000 miles, possibly from freezing temperatures.

36.     The cracked windshield was not covered under his vehicle's warranty.

37.     Plaintiff paid out-of-pocket to his insurance company a deductible of $348 to replace the windshield.

38.     Mr. Jones has paid out-pocket for one windshield replacement.  He has never received a reimbursement from Subaru.

39.     Had Mr. Jones known of the Defect at the time of sale, he would not have purchased the vehicle or paid less for it to account for the defect.

### Randy Robbie

40.     Plaintiff Robbie, a resident of Illinois, purchased a new 2017 Subaru Forester.

41.     Plaintiff's Class Vehicle was designed, advertised, marketed, offered for sale, and sold by Defendant.

42.     Plaintiff purchased his Class Vehicle without any knowledge of the Defect.

43.     Mr. Robbie exercised reasonable care and followed all safety, maintenance, and operating instructions with regard to his Class Vehicle.

44.     Plaintiff's first windshield cracked one week after purchase for unknown causes.

45.     The cracked windshield was not covered under his vehicle's warranty.

46.     Mr. Robbie paid $120 out-of-pocket to replace the windshield.

47.     Plaintiff's windshield cracked a second time at 20,000 miles for unknown causes.

48.     The cracked windshield was not covered under his vehicle's warranty.

49.     Mr. Robbie again paid out-of-pocket to replace the windshield.

50.     Mr. Robbie has paid out-of-pocket for two windshield replacements.  He has never received a reimbursement from Subaru.

51.     Had Mr. Robbie known of the Defect at the time of sale, he would not have purchased the vehicle or paid less for it to account for the defect.

**Brittany Funk**

52.     Plaintiff Funk, a resident of Indiana, purchased a new 2019 Subaru Forester on June 2019 for $29,500.

53.     Plaintiff's Class Vehicle was designed, advertised, marketed, offered for sale, and sold by Defendant.

54.     Plaintiff purchased her Class Vehicle without any knowledge of the Defect.

55.     Ms. Funk exercised reasonable care and followed all safety, maintenance, and operating instructions with regard to her Class Vehicle.

56.     Plaintiff's first cracked windshield occurred at 14,000 miles from unknown causes.

57.     The cracked windshield was not covered under her vehicle's warranty.

58.     Ms. Funk is in the process of paying out-of-pocket to her insurance company a deductible of $500 to replace the windshield.

59.     Ms. Funk has paid out-of-pocket for one windshield replacement.  She has never received a reimbursement from Subaru.

60.     Had Ms. Funk known of the Defect at the time of sale, he would not have purchased the vehicle or paid less for it to account for the defect.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

61.     Numerous complaints submitted by owners of the Class Vehicles on the National Highway Traffic Safety Administration ("NHTSA") website confirm the extent of the Defect, and many demonstrate that Subaru had prior knowledge of the Defect before selling to Plaintiffs, including:

      a.  2017 Subaru Outback: STAR CRACK IN WINDSHIELD DISCOVERED STATIONARY (IN CARPORT) THE DAY AFTER PURCHASING THE VEHICLE (ODOMETER READING 200 MILES). LOCATION OF CRACK SLIGHTLY ABOVE WIPER BLADE ON PASSENGER SIDE. IMPACT

6

STRIKE THE SIZE OF A PINHEAD. THE DAMAGE IS CHARACTERISTIC OF PRIOR MODEL YEARS 2015 AND 2016 IN WHICH THE MANUFACTURER INITIATED RECALLS. IT IS APPARENT THIS PROBLEM CONTINUES AND HAS YET TO BE RESOLVED.

b.  2017 Subaru Outback: OUR WINDSHIELD BEGAN SLOWLY CRACKING STARTING AT THE BASE OF THE DRIVER SIDE FRONT WINDOW. IT BEGAN AT THE BOTTOM EDGE (HEAT STRIP) AND MOVED HALF UP THE WINDSHIELD BEFORE WE REPLACED. COST $569 FOR OEM WINDSHIELD. SUBARU DEALER DENIED THE WARRANTY CLAIM, WHILE ADMITTING A PROBLEM WITH EARLIER VERSIONS THAT YEAR'S OUTBACK.

c.  2017 Subaru Outback: WINDOW CRACKED BUT WAS NOT HIT WITH ANYTHING. CRACK APPEARED ON THE DRIVERS SIDE, HALFWAY DOWN THE WINDSHIELD, AND OBSTRUCTS VIEW OF THE DRIVER. CAR HAS LESS THAN 1600 MILES ON IT. DEALER STATED IT WAS NOT COVERED AS A DEFECT AND WE ARE ON OWN OWN TO REPLACE IT. THERE ARE NUMEROUS COMPLAINTS OF SUBARU OUTBACK WINDSHIELDS CRACKING BECAUSE THEY ARE TO THIN. DANGEROUS TO DRIVE DUE TO VISIBILITY ISSUES.

d.  2017 Subaru Outback: WINDSHIELD HAD INTERNAL CRACKING DEVELOPED WHERE RIGHT UNDER REAR VIEW MIRROR MOUNTING AREA. NO PHYSICAL CONTACT BUT THE CAR WAS PARKED HOT OUTSIDE FOR 3 DAYS AND DEFECT HAPPENED. INITIALLY REAR VIEW MIRROR WAS STILL ON WINDSHIELD BUT AFTER SEVERAL DAYS DRIVE, IT FELL DOWN. IT IS DEFINITELY SAFETY RELATED DEFECT.

e.  2017 Subaru Outback: I HAVE A 2017 SABARU OUTBACK WITH THE EYESIGHT SYSTEM. IN LATE JULY 2017 I HAD TO REPLACE A WINDSHIELD WHEN I GUESS A PEBBLE HIT AND IT IMMEDIATELY SPREAD A LARGE CRACK THAT OVER NEXT FEW DAYS COVERED ENTIRE WINDSHIELD. $678.80 + HALF DAY OF WORK LOST. ON 9/27/17 AS I WAS GOING ABOUT 10 MPH ENTERING HIGHWAY I HEARD TWO POPCORN POPS - NOTHING HIT THE WINDSHIELD- LOOKED OVER, AND THE SAME TYPE CRACK APPEARED STARTING AT EDGE OF WINDOW. THIS HAS SPREAD OVER LAST FEW DAYS TO COVER MOST OF TEH WINDSHIELD. WHEN THE WINDSHIELD REPLACED IN JULY 2017, A LADY WAITING THERE TOLD ME THAT HER 2016 OUTBACK WINDSHIELD HAD BEEN REPLACED THREE (3) TIMES ALREADY. THIS IS AN EXPENSIVE CONSUMER DEFECT WHICH SABARU REFUSES TO ACKNOWLEDGE, AND THEY WILL NOT COVER TEH WINDSHIELD UNDER THE VEHICLE WARRANTY.

f.  2017 Subaru Outback: PURCHASED A 2015 OUTBACK AND EXPERIENCED 4 CRACKED WINDSHIELDS IN AN 18 MONTH PERIOD. TRADED THE

CAR IN FOR A 2017 OUTBACK HOPING THEY FIXED THE DESIGN FLAW. NOW 6 MONTHS AFTER 2017 OUTBACK PURCHASE AN OUTRAGEOUS CRACK FORMED ON THIS NEW VEHICLE. ALL 5 CRACKS BEGAN NOT FURTHER THAN 2 TO 3 INCHES FROM THE FRAME. SO 5 CRACKED WINDSHIELDS IN A 2 YEAR PERIOD FROM SUBARU OUTBACK. AUTOMOBILES. THE DEALERSHIP AND MANUFACTURER NEVER WOULD ACKNOWLEDGE THAT THERE ARE SO MANY OTHER PEOPLE EXPERIENCING THIS PROBLEM. SOMETIMES THE CRACK WOULD APPEAR SPONTANEOUSLY, SOMETIMES IT ACTUALLY SOUNDED LIKE CRACKLING SOUNDS HAPPENING IN FRAME AND MAYBE (?) ONE TIME THERE MIGHT HAVE BEEN A SMALL PEBBLE HIT THE WINDSHIELD. TWICE I WASN'T EVEN DRIVING THE VEHICLE. IMPEDES VISION. DISTRACTS DRIVER.

g.  2017 Subaru Forester: BOUGHT NEW FORESTER IN MAY 2017. WINDSHIELD CRACKED @ JULY 2017. REPLACEMENT CRACKED OCTOBER 2017. SUBARU DENIED COVERAGE BOTH TIMES. FIRST WINDSHIELD I WAS MOVING ON HIGHWAY BUT UNAWARE OF BEING STRUCK BY ANYTHING. IT WAS NEARLY 100 DEGREES OUTSIDE AND AC WAS ON NICE 68 DEGREES. SECOND WINDSHIELD APPEARED TO CRACK WHILE PARKED IN GARAGE. SECOND WINDSHIELD LEAKED. CRACK IS NEAR WHERE LEAK WAS "FIXED."

h.  2017 Subaru Outback: WAS TURNING LEFT INTO A DRIVEWAY AT RESURRECTION CEMETERY IN MONTEREY PARK CA WHEN I HEARD A LOUD POPPING SOUND AND THEN NOTICED THE FRONT WINDSHIELD WAS CRACKED. IT APPEARED NOTHING HAD HIT IT. THE CRACK IS LOCATED IN THE CENTER LOWER BOTTOM STARTING FROM THE EDGE AND CREATING AN "L" PATTERN. IT IS A SUBARU 2017 OUTBACK WITH 9,100 MILES.

i.  2017 Subaru Outback: THE QUALITY OF THE WINDSHIELD LEAVES A LOT TO BE DESIRED. THIS IS THE SECOND TIME IN LESS THAN A YEAR I HAVE HAD TO REPLACE MY WINDSHIELD. IN BOTH OCCASIONS, THE WINDSHIELD CRACKED WHILE THE VEHICLE WAS IN MOTION. I THOUGHT THE FIRST CRACK WAS CAUSED BY A SMALL OBJECT/PROJECTILE I COULD NOT SEE. THEN THE SECOND CRACK OCCURRED A FEW MONTHS LATER (ABOUT 5 MONTHS APART) AROUND THE SAME SPOT (DRIVER SIDE) AS THE FIRST ONE. IN ABOUT 30 MINUTES, THE CRACK RADIATED QUICKLY FROM THE DRIVER SIDE ALL THE WAY TO THE MIDDLE OF THE WINDSHIELD. IN BOTH CASES, EVEN IF THE CRACK WAS CAUSED BY A SMALL OBJECT, THE IMPACT WAS TOO SMALL TO EXPLAIN SUCH MAJOR DAMAGE. THE FIRST TIME THE WINDSHIELD CRACKED, IT WAS REPLACED BY A SUBARU RECOMMENDED PART AND NOT BY AN AFTERMARKET WINDSHIELD. I WILL USE A SUBARU RECOMMENDED PART AGAIN. HOWEVER, BASED ON THE EVIDENCE, I DO NOT HAVE ANY

8

CONFIDENCE THAT THE PROBLEM WILL NOT RESURFACE. I THINK THE WINDSHIELD IS FUNDAMENTALLY DEFECTIVE.

j.   2017 Subaru Forester: WINDSHIELD CRACKED ALL BY ITSELF A SECOND TIME. GOT INTO THE CAR, LOOKED UP, MASSIVE CRACK FROM THE TOP EDGE DOWN AND ACROSS. THERE WAS NO IMPACT. FILED INSURANCE CLAIM, TOOK TO DEALERSHIP, HAD WINDSHIELD REPLACED WITH ANOTHER OEM SUBARU WINDSHIELD, HAD EYESIGHT SYSTEM CALIBRATED. CAR SAT AT DEALERSHIP UNDRIVEABLE FOR 4 MONTHS BECAUSE WINDSHIELD WAS ON NATIONAL BACKORDER.

k.   2018 Subaru Outback: WINDSHIELD EASILY CRACKS - WE HAVE HAD OUR 2018 OUTBACK FOR LESS THAN 6 MONTHS AND LESS THAN 5000 MILES AND HAVE HAD 3 WINDSHIELDS DEVELOP SEVERE CRACKING. THE FIRST TWO WERE REPLACED WITH FACTORY WINDSHIELDS BY PROFESSIONAL INSTALLERS. THE SLIGHTEST IMPACT, THE LAST TWO BEING BARELY PERCEIVABLE, RESULTS IN AN ELONGATED CRACK FORMING. WITH FOUR VEHICLES IN OUR HOUSEHOLD, WE HAVE ONLY HAD 2 WINDSHIELDS REPLACED IN 14 YEARS SINCE MOVING TO THIS AREA SO HAVE RULED OUT BAD LUCK OR DRIVING HABIT. SUBARU (BOTH DEALER AND CORPORATE) HAVE BEEN UNRESPONSIVE. THE CURRENT CRACKING AND STAR FORMED AFTER A BARELY AUDIBLE IMPACT. THE STAR GREW AND IS NOW CRUMBLING IN THE CENTER WITH 3 FRACTURE LINES EXTENDING FROM IT. FIRST INCIDENT - ON I-17 WHILE PASSING A SEMI APPROX SPEED 75 MPH SECOND INCIDENT - ON AZ 69 IN NORMAL TRAFFIC APPOX SPEED 45 MPH THIRD INCIDENT - ON I-17 WHILE FOLLOWING A VEHICLE USING ISIGHT DYNAMIC CRUISE CONTROL APPROX SPEED 75 MPH FIRST TWO CLAIMS COVERED BY INSURANCE WHICH WE ATTRIBUTED TO BAD LUCK. THIRD INCIDENT IN SO FEW MONTHS/MILES SEEMS TO POINT TO QUALITY/DESIGN ISSUE SINCE OTHER VEHICLES (PAST AND PRESENT) HAVE NEVER DEVELOPED THIS SEVERE CRACKING (PICTURE PROVIDED) WHICH PROMPTED THIS COMPLAINT.

l.   2018 Subaru Forester: WINDSHIELD BREAKAGE 2018 SUBARU FORESTER. OUR WINDSHIELD WAS HIT TWICE BY SMALL ROCKS IN EXACTLY THE SAME PLACE TWICE WITHIN 30 DAYS. ONE BREAK ON THE ORIGINAL WINDSHIELD AND AGAIN ON THE REPLACEMENT WINDSHIELD. IT APPEARS THE DESIGN OF THE HOOD FACILITIES THE DAMAGE OR THE DESIGN OF THE GLASS IS FRAGILE. THESE BREAKS OCCURRED WHILE DRIVING ON THE INTERSTATE WITH SPEEDS OF AROUND 70 MPH. WHEN SPEAKING TO THE SUBARU DEALERSHIP OF OUR CONCERN THEY INFORMED US THAT SUBARU WINDSHIELDS HAD A TENDENCY TO CRACK EASILY AND NEEDED TO BE REPLACED

OFTEN. WHEN WE ASKED THEM IF THIS SEEMED LIKE A SAFETY CONCERN THEY DID NOT SOME TO THINK IT WAS.

m. 2018 Subaru Forester: THE WINDSHIELD SIMPLY CRACKED UNDER THE PASSENGER WIPER AND QUICKLY SPREAD ACROSS THE WINDSHIELD. THERE WAS NO VIABLE IMPACT AND IT APPEARED OVERNIGHT. THIS HAPPENED IN EARLY SEPTEMBER AND WE ARE STILL WAITING FOR AN OEM REPLACEMENT FROM SUBARU.

n. 2018 Subaru Outback: MY WINDSHIELD IS CRACKED FOR THE 2ND TIME NOW IN ITS FIRST YEAR OF OWNERSHIP. THE FIRST TIME IT CRACKED IT WAS BECAUSE OF A PEBBLE STRIKE FROM THE ROAD. EXTREMELY SMALL FRAGMENT STRUCK THE GLASS, MADE A POCK MARK, AND THE WINDSHIELD WAS REPLACED. TODAY, LESS THAN A MONTH LATER A NEW CRACK APPEARED WHILE DRIVING WITHOUT ANY STRIKE FROM AN OBJECT. SUBARU DEALER CLAIMS IT WAS STRUCK BUT FIND A CRACK ONLY WITHOUT ANY POINT ALONG IT OF AN IMPACT MAKES ME VERY VERY SUSPICIOUS. NOW I HAVE TO WAIT FOR THE INSURANCE COMPANY TO SETTLE ON CHARGES AND SEND A CHECK BEFORE THE NEXT WINDSHIELD CAN BE APPLIED. MY WIFE AND I WERE CALMLY DRIVING ON COMPLETELY PAVED ROADS WHEN WE BOTH WATCHED THE CRACK APPEAR AND GROW DURING OUR DRIVE. :-( I HAVE DRIVEN FOR 50+ YEARS, AND OWNED 20+ CARS. I'VE NEVER HAD THIS HAPPEN.

o. 2019 Subaru Outback: PURCHASED A BRAND NEW 2019 SUBARU OUTBACK 3.6R LIMITED WITH EYESIGHT. WITH LESS THAN 23 MILES ON IT, THE WINDSHIELD SPONTANEOUSLY CRACKED JUST SITTING IN THE GARAGE. RESEARCHING THE WEB SHOWS THIS IS A PROBLEM WITH SUBARU OUTBACK.

p. 2019 Subaru Outback: THE CAR WAS NOT USED OVER THE WEEKEND EXCEPT FOR A 5 MILE TRIP TO CHURCH WHERE IT DID NOT ENCOUNTER ANY ROCKS, HITS, ETC. DROVE HOME AND THE CAR WINDSHIELD WAS FIND. THE NEXT MORNING WHEN I GOT INTO THE CAR, AFTER I USED MY REMOTE TO START AND WARM UP MY OUTBACK, THERE WAS ABOUT AN 8-10 INCH CRACK IN THE WINDSHIELD THAT ORIGINATED FROM BEYOND THE WINDSHIELD WIPER ON THE PASSENGER SIDE OF THE CAR. THE CRACK GREW WORSE TO ABOUT 12 INCHES. CALLED SUBARU DEALER WHO DIRECTED ME TO THEIR WINDSHIELD SERVICE AGENT. TOOK TIME OFF FROM WORK AND THEY INSTALLED OEM GLASS (INSURANCE COVERS THIS) AND CALIBRATED THE WINDSHIELD. AFTER DRIVING HOME, THE CAR MADE WIND TUNNEL NOISES, WINDSHIELD FLUID SYSTEM DID NOT WORK, NAVIGATION DID NOT WORK SO I BROUGHT THE CAR TO THE DEALER (TOOK MORE TIME OFF FROM WORK). THEY FOUND A LEAK IN THE WINDSHIELD, REPAIRED THE FLUID UNIT AND

IGNORED THE NAVIGATION ISSUE. THEY SENT ME BACK TO THEIR AGENT. THEY TOOK OUT THE WINDSHIELD REPOSITIONED IT AND SENT ME ON MY WAY. TODAY I FOUND PUDDLES OF WATER ON THE FLOOR OF MY CAR (LEAK), NAVIGATION DOES NOT WORK AND WIND TUNNEL NOISE IS STILL THERE. THIS WINDSHIELD IS SUPPOSED TO PROTECT THE DRIVER AND PASSENGER AS EXTRA SUPPORT FOR THE ROOF, PREVENTION OF OBJECTS FLYING AT YOU AND ALLOW FOR THE EYESIGHT SYSTEM TO DO ITS JOB. THIS CAR IS ONE MONTH OLD AND THE CRACK IN THE WINDSHIELD EXPERIENCE SOUNDS EERILY SIMILAR TO OTHERS' COMPLAINTS. WHEN YOU PAY THE MONEY FOR A TOP SAFETY PICK, YOU WANT THE SAFETY AND I DO NOT HAVE IT.

q. 2019 Subaru Forester: I AM HERE TO REPORT MY 2019 SUBARU FORRESTER WINDSHIELD CRACK. I THE CAR IS ONLY 1 MONTH OLD AND WE FOUND THE CRACK IN THE MORNING WHILE SITTING IN THE DRIVEWAY I HEARD THE SAME PROBLEM HAPPENS ON 2015 OUTBACK I CALLED THE SHOP AND THEY TOOK PICTURES AND THEY DID NOT FIND ANY CHIPS THAT WOULD INDICATE A ROCK OR PEBBLE HIT THE CAR AND SAID THEY WILL CALL SUBARU AND GET BACK TO ME

r. 2019 Subaru Forester: WINDSHIELD CRACKED ,BOTTOM CENTER UP ABOUT 15" CIRCLE .VEHICLE PARKED .NO STONE MARK OR STAR MARK. LOOKS LIKE FACTORY DEFECT. I'VE HEARD OF OTHERS DOING SAME.

s. 2019 Subaru Outback: WINDSHIELD SPONTANEOUSLY CRACKED AT THE BASE OF THE WINDSHIELD, UNDER THE WIPER BLADE WHILE DRIVING ON THE HIGHWAY. I WAS NOT FOLLOWING ANY VEHICLES SO A ROCK CHIP COULD NOT BE THE CAUSE. THIS IS POOR WINDSHIELD QUALITY AND DESIGN BY SUBARU.

62.     The high quantity and frequency of complaints, repairs, and replacements related to the Defect over multiple years across multiple Subaru vehicle models, including the Class Vehicles and earlier model years, indicate that Defendant has known about the Defect since 2014 or before but has continued designing and manufacturing Class Vehicles with the Defect.

63.     Defendant's extensive use of pre-release testing and focus on safety would have also informed Defendant of the Defect in 2014 or before.

64.     A reasonable analysis of the design and manufacturing of the Class Vehicles would have revealed the Defect.

11

65.   In 2015, Defendant implemented a New Car Limited Warranty program for vehicles manufactured in 2015 or earlier in response to frequent complaints, repairs, and replacements of defective windshields in Subaru vehicles. The new warranty program provided a 5-year warranty on the vehicle windshield, good for one windshield replacement. However, the replacement windshield were similarly defective. Defendant's implementation of the new warranty program indicates that Defendant has known about the Defect since 2015 or before but has continued designing and manufacturing Class Vehicles with the Defect.

66.   Defendant actively concealed the Defect from customers by failing to disclose the Defect to customers and by directing dealerships to refuse to repair or replace defective windshields under warranty, but instead to blame drivers or unforeseeable circumstances for a damaged windshield.

67.   It is dangerous and illegal to drive a vehicle with a chipped, cracked, or shattered windshield because it impairs the driver's view and the damage can expand while driving.

68.   The windshield is a safety feature in itself protecting the driver and passengers from outdoor debris and acting in concert with the vehicle airbags and seatbelts to protect the driver and passengers in the event of an accident. If the windshield is defective, it may not provide adequate support to the airbag to minimize injury.

69.   The windshield is a structural component of vehicles, supporting the roof, especially in the event of a rollover.

70.   The Class Vehicles' windshields are defective because they frequently, easily, and spontaneously chip, crack, or shatter with little or no apparent cause.

71.   Unlike windshields in other modern, comparable vehicles which are more durable, the Class Vehicles' windshields are fragile and prone to chipping, cracking, and shattering.

72.     The Class Vehicles' windshields may crack or shatter with no apparent cause, such as when the vehicle is parked or when there is no way for anything to hit the windshield. Such cracks often appear near the edge of the windshields accompanied by a popping sound.

73.     The strength of the Class Vehicles' windshields may also be affected by normal hot or cold outdoor temperatures.

74.     Modern, comparable windshields do not chip, crack, or shatter as readily as the Class Vehicles' windshields in response to minor impacts, such as from a pebble while driving.

75.     Consumers reasonably expect that the windshield of a modern, comparable vehicle should be durable enough to withstand minor impacts while driving under normal conditions.

76.     The Class Vehicles' windshields also respond more drastically to chips and cracks, resulting in small chips and cracks rapidly growing to long cracks covering the entire windshield.

77.     Defendant advertises, markets, represents, and warrants the Class Vehicles as being safe and able to drive off-road and on rough terrain. Subaru's website states:

   a.   "There's safe, and then there's SUBARU SAFE. When you choose a Subaru, you're not just choosing a car. You're choosing a company with a lifetime commitment to protecting those you love. Learn more about our industry-leading safety innovations, and why Subaru is a leading choice among parents with teen drivers."

   b.   "With Subaru Symmetrical All-Wheel Drive, sophisticated traction and stability-control systems, and elevated ride height, the Outback is a more-than-capable machine for navigating that place where the pavement ends and the real trip begins. Just as your route and adventure are flexible, so is the Outback. . . . With power going to all four corners and electronics constantly monitoring wheel spin to make sure that power is sent where it's needed, the Outback can tackle tough terrain out of the box."

   c.   "All Forester models feature lower body side cladding, which helps protect against mud, rocks and other road debris."

   d.   "In the Forester 2.5i Limited, 2.5i Touring and the 2.0XT models, driver-selectable X-Mode engages optimized control of the engine, transmission shift pattern, Active AWD front/rear clutch force, brakes, VDC and other critical systems to provide better wheel control on slippery surfaces and steep inclines. Also in those models,

13

Hill Descent Control, which is automatically engaged with X-Mode, uses the VDC system to help maintain a constant vehicle speed when the Forester is travelling downhill off-road, which helps enhance control."

78.     A reasonable consumer would consider Defendant's marketing and advertising that Class Vehicles are safe and able to drive off-road and on rough terrain to mean that the Class Vehicles' windshields should be durable enough to withstand minor impacts and should not crack spontaneously.

79.     Defendant did not inform consumers that the Class Vehicles' windshields are fragile and prone to chipping, cracking, and shattering.

80.     Some Class Vehicles are also equipped with a safety alert system called EyeSight which uses cameras mounted near the rear-view mirror. The EyeSight cameras only work properly, and Subaru only warrants the EyeSight system, if the cameras are calibrated by a Subaru dealer and the vehicle has a genuine Subaru windshield.

81.     The EyeSight system therefore increases the cost of a windshield replacement because the Class Vehicles must have a genuine Subaru windshield and the cameras must be recalibrated by a Subaru dealer after replacement.

82.     A windshield replacement for the Class Vehicles may cost approximately $500 to $1,200 due, in part, to the requirements of a genuine Subaru windshield and recalibration of the EyeSight cameras.

83.     Defendant advertises, markets, represents, and warrants the Class Vehicles as being merchantable, high-quality, durable, and safe.

84.     Defendant knew or should have known that the defective design and manufacture of the windshield of the Class Vehicles would create an unreasonable risk of chipping, cracking, and shattering during normal, recommended, and foreseeable use.

14

85.     Defendant warranted the Class Vehicles for "defects in material or workmanship" for three years or 36,000 miles.

86.     Defendant's warranty excludes "any part which malfunctions, fails or is damaged due to objects striking the vehicle, road hazards, whether on or off the road, accident, fire, neglect, abuse or any other cause beyond the control of [Subaru]."

87.     Defendant frequently refuses to cover windshield replacements under the warranty by claiming that any damage is due to an accident, forcing consumers to pay for a repair or replacement out-of-pocket or through their auto insurance.

## CLASS ACTION ALLEGATIONS

88.     Plaintiffs seek to represent the classes set forth below and bring this class action pursuant to Fed. R. Civ. P. 23.

### Nationwide Class

All Plaintiffs propose to represent:

*All persons who purchased or leased a Class Vehicle in the United States.*

### Delaware Subclass

Plaintiff Zaback proposes to represent:

*All persons who purchased or leased a Class Vehicle in Delaware.*

### North Carolina Subclass

Plaintiff Jones proposes to represent:

*All persons who purchased or leased a Class Vehicle in North Carolina.*

### Illinois Subclass

Plaintiff Robbie proposes to represent:

*All persons who purchased or leased a Class Vehicle in Illinois.*

15

**Indiana Subclass**

Plaintiff Funk proposes to represent:

*All persons who purchased or leased a Class Vehicle in Indiana.*

89.     The Classes exclude the following: Defendant, its affiliates, and its current and former employees, officers and directors, and the Judge assigned to this case.

90.     Plaintiff reserves the right to modify, change, or expand the definition of the Class based upon discovery and further investigation.

91.     *Numerosity*: The Classes are so numerous that joinder of all members is impracticable. There are hundreds or thousands of Class members. The Classes are ascertainable by records in Defendant's possession.

92.     *Commonality*: Questions of law or fact common to the class include, without limitation:

   a.   Whether the Class Vehicles are defective;

   b.   Whether the Class Vehicles have a design defect;

   c.   Whether the Class Vehicles have a manufacturing defect;

   d.   Whether Defendant knew or should have known of the Defect;

   e.   Whether Defendant failed to disclose the Defect;

   f.   Whether Defendant concealed the Defect;

   g.   Whether a reasonable consumer would consider the Defect to be material;

   h.   Whether Defendant engaged in unfair or deceptive trade practices;

   i.   Whether Defendant breached a warranty;

   j.   Whether Defendant engaged in fraud; and

   k.   Whether Defendant was unjustly enriched.

16

93.     *Typicality*: The claims or defenses of Plaintiffs are typical of the claims or defenses of the Class members. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct and the same Defect, and the Class members are entitled to relief under the same legal theories asserted by Plaintiff.

94.     *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, breaches of warranties, product liability, product design defects, and state consumer fraud statutes.

95.     *Predominance*: Questions of law or fact common to Class members predominate over any questions affecting only individual members. Common questions such as the extent, nature, causes, and consequences of the Defect, Defendant's knowledge and concealment of the Defect, and Defendant's liability predominate over individual questions such as measurement of economic damages.

96.     *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all members of the Class is impracticable and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

97.     *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

98.     Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

99.      Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

100.    Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

## STATUTES OF LIMITATIONS

101.    Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

102.    Defendant is estopped from relying upon any statutes of limitations by reason of their fraudulent misrepresentation, suppression, and concealment of material facts, and any applicable statutes of limitations are tolled by such conduct.

103.    Defendant did not inform Plaintiff or Class members about the Defect inherent in the Class Vehicles even though Defendant knew about the Defect at the time of purchase.

104.    As a result of Defendant's omissions and misrepresentations, Plaintiff and Class members did not know about the Defect inherent in the Class Vehicles.

## COUNT I

**Breach of Warranty in Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301, *et seq.***
**(on behalf of Plaintiffs and the Nationwide Class)**

105.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

18

106.    Plaintiffs and Class members are each a "consumer" within the meaning of 15 U.S.C. § 2301(3).

107.    Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4) and (5).

108.    The Class Vehicles are a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

109.    Defendant's warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

110.    Defendant's implied warranty of merchantability implied in the contract for sale of the Class Vehicles is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

111.    The amount in controversy of each individual claim is greater than $25 and the amount in controversy is greater than $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

112.    The warranties cover the Defect and any damage proximately caused by the Defect, including repair or replacement of the vehicle.

113.    Plaintiffs and Class members reasonably and justifiably relied on Defendant's warranty when purchasing the Class Vehicles.

114.    Defendant represented to Plaintiffs and Class members that the Class Vehicles were merchantable, high-quality, durable, and safe.

115.    The Defect caused the Class Vehicles to fail to conform to Defendant's representations.

116.    The Defect caused the Class Vehicles to be unfit for their ordinary purposes because the Defect prevents consumers from safely driving the Class Vehicles.

117.    The warranty fails of its essential purpose to the extent it excludes the Defect because the Defect unreasonably hinders the safe, normal, and foreseeable use of the Class Vehicles, the Defect is not caused by improper use, neglect, accident, or any other cause outside of Defendant's control, and Defendant is unable or unwilling to provide an adequate, effective, and lasting remedy and return the Class Vehicles to warranted condition.

118.    Defendant's exclusion of implied warranties is void to the extent it excludes a warranty of merchantability applicable to the Defect because the Defect causes the warranty to fail of its essential purpose.

119.    Defendant breached the warranty because the Defect constitutes a defect in material or workmanship and Defendant is unable or unwilling to provide an adequate, effective, and lasting remedy and return the Class Vehicles to warranted condition.

120.    Defendant breached the implied warranty because the Defect causes the Class Vehicles to fail to conform to Defendant's representations and to be unfit for their ordinary purpose and Defendant is unable or unwilling to provide an adequate, effective, and lasting remedy and return the Class Vehicles to warranted condition.

121.    Defendant's breach deprived Plaintiffs and Class members of the benefit of the bargain.

122.    Accordingly, Defendant has also violated 15 U.S.C. § 45(a)(1) by way of 15 U.S.C. § 2310(b).

123.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

## COUNT II

**Breach of Express Warranty**
**U.C.C. § 2-313**
**(on behalf of Plaintiffs and the Nationwide Class or, in the Alternative, Plaintiffs on Behalf**
**of their Respective State Classes)**

124.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

125.    "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." U.C.C. § 2-313(a)(1).

126.    Defendant's warranty of the Class Vehicles is an express warranty within the meaning of U.C.C. § 2-313.

127.    The express warranty covers the Defect and any damage proximately caused by the Defect, including repair or replacement of the Class Vehicle.

128.    Plaintiff and Class members reasonably and justifiably relied on Defendant's express warranty when purchasing the Class Vehicles.

129.    The express warranty fails of its essential purpose to the extent it excludes the Defect because the Defect unreasonably hinders the safe, normal, and foreseeable use of the Class Vehicles, the Defect is not caused by improper use, neglect, accident, or any other cause outside of Defendant's control, and Defendant is unable or unwilling to provide an adequate, effective, and lasting remedy and return the Class Vehicles to warranted condition.

130.    Defendant breached the express warranty because the Defect constitutes a defect in material or workmanship and Defendant is unable or unwilling to provide an adequate, effective, and lasting remedy and return the Class Vehicles to warranted condition.

21

131.    Defendant's breach deprived Plaintiff and Class members of the benefit of the bargain.

132.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

## COUNT III

### Fraud by Concealment, Common Law
### (on behalf of All Plaintiffs and the Nationwide Class or, in the Alternative, Plaintiffs on Behalf of their Respective State Classes)

133.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

134.    All Plaintiffs assert this cause of action on behalf of themselves and their respective classes.

135.    Subaru committed fraud by failing to disclose and actively concealing, at the point of sale and otherwise, that the windshields in Class Vehicles are defective and pose a safety hazard. Subaru concealed the truth about the defect, intending for Plaintiffs and the Class to rely – which they did.

136.    A reasonable consumer would not have expected the windshield to suffer from the defect described herein. Plaintiffs and the members of their classes did not know of the facts which were concealed from them by Subaru. Moreover, as consumers, Plaintiffs and the members of the classes did not, and could not, unravel the deception on their own.

137.    Subaru had a duty to disclose the defect. Subaru had such a duty because the true facts were known and/or accessible only to it and because it knew these facts were not known or reasonably discoverable by Plaintiffs or the members of the classes.

138.    As a direct and proximate result of Subaru's conduct, Plaintiffs and members of their classes have been harmed in that they purchased Class Vehicles they otherwise would not have, paid more for Class Vehicles than they otherwise would, paid for windshield diagnoses, repairs, and replacements, towing, and/or rental cars, and are left with Class Vehicles of diminished value and utility because of the defect.  Meanwhile, Subaru has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

139.    Based on the foregoing, Plaintiffs are entitled to all remedies available, including refunds, actual damages, liquidated damages, punitive damages, attorney fees and other reasonable costs.  Plaintiffs and Class members request that the Court award equitable relief, including an order requiring Subaru to adequately disclose and repair the windshield defect and an order enjoining Subaru from incorporating the defective windshields into its vehicles in the future.

140.    Subaru's acts· and omissions were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiffs and the classes; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an amount sufficient to punish them and deter such conduct in the future, which amount shall be determined according to proof at trial.

## COUNT IV

**(Violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, §§ 2511 through 2584)**
**(On Behalf of Plaintiff Zaback and the Delaware Subclass)**

141.    Plaintiff Zaback incorporates the preceding allegations by reference as if fully set forth herein.

142.    This cause of action is brought on behalf of Mr. Zaback and the Class pursuant to Del. Code Ann. tit. 6, § 2525.  Delaware's Consumer Fraud Act protects consumers "unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within this State." Del. Code Ann. tit. 6, § 2512.  Pursuant to § 2513,

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

143.    Del. Code Ann. tit. 6, § 2525 permits any consumer injured by a violation of § 2513 to bring a civil action, including a class action, for damages and injunctive relief.

144.    Plaintiff Zaback is informed, believes, and alleges, based on such information and belief, that Subaru committed unfair and deceptive business acts and/or practices in violation of Del. Code Ann. tit. 6, § 2513.

145.    Subaru has, at all material times, represented to Plaintiff and the Class that Class Vehicles were safe, reliable, and built to suit their ordinary and intended purpose. Subaru represented that its windshields were in merchantable condition and fit for the ordinary purpose for which windshields are used. But unlike other major car manufacturers, Subaru fails to tell consumers that Class Vehicle windshields are prone to cracking, either from contact with common road debris, or for no discernible reason. As a result, and contrary to Subaru's representations, Mr. Zaback and the Class were charged a higher amount than they otherwise would have paid had they known of the Class Vehicles' material defect.

146.    These acts and practices are unfair and deceptive in material respects, offend public policy, are immoral, unethical, oppressive and unscrupulous.

24

147.    As a direct and proximate result of Subaru's unfair and deceptive acts and practices, Mr. Zaback and the Class have suffered injury by paying out of pocket for defective windshields that easily cracked when they came into contact with articles on the road.

148.    Mr. Zaback and the Class would not have incurred those out of pocket costs if Subaru's acts and practices with regard to its defective windshields were not unfair and deceptive.

149.    Based on the foregoing, Mr. Zaback and the Class are entitled to all remedies available pursuant to §§ 2522 and 2523, including, but not limited to, compensatory relief and injunctive relief.

### COUNT V

**(North Carolina Breach of Implied Warranty of Merchantability)**
**(On behalf of Plaintiffs Jones and Garrett and the North Carolina Subclass)**

150.    Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

151.    Plaintiffs Jones and Garrett bring this claim individually and on behalf of the North Carolina Subclass.

152.    As detailed herein, Class Vehicles are not "fit for the ordinary purposes for which such goods are used." N.C. Gen. Stat. § 25-2-314. Specifically, Plaintiff Jones' Class Vehicle suffered a cracked windshield at or around 6,000 miles and Plaintiff Garrett's Class Vehicle suffered a cracked windshield at or around 1,500 miles, despite Defendant's advertisement representing Class Vehicles as safe and reliable vehicles with high-end safety features, as described above.

153.    The limitation in coverage of the implied warranty of merchantability is ineffective because it was not "conspicuous", insofar as it was buried in the sales contract that related to the vehicles of Plaintiffs and the members of the North Carolina Subclass. The limitation in coverage of the implied warranty of merchantability is also ineffective because it was not "conscionable",

insofar as Subaru maintained far superior bargaining power and knowledge as a leading manufacturer of vehicles.

154.   Plaintiffs Jones and Garrett and members of the North Carolina Subclass would not have purchased their Class Vehicles or would have paid less for them had they known the true defective nature of the Class Vehicles, specifically the windshield defect that causes them to crack easily from contact with debris on the road.

155.   As a result of Defendant's breach of warranty, Plaintiffs Jones and Garrett and the members of the North Carolina Subclass have been damaged in the amount of the purchase price or, in the alternative, the diminished value of their Class Vehicles and any consequential damages resulting from their purchases.

## COUNT VI

**(Violation of the North Carolina Consumer Protection Act)**
**(N.C. Gen. Stat. § 75-1.1, *et. seq.*)**
**(Brought on behalf of Plaintiffs Jones and Garrett and the North Carolina Subclass)**

156.   Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

157.   Plaintiffs Jones and Garrett bring this claim individually and on behalf of the North Carolina Subclass.

158.   Plaintiffs Jones and Garrett and the members of the North Carolina Subclass are consumers who purchased Class Vehicles, which are consumer goods.

159.   Plaintiffs Jones and Garrett and the members of the North Carolina Subclass are entitled to the protections of the Consumer Protection Act, N.C. Gen. Stat. § 75-1.1, *et. seq.* (the "Act") and may recover damages pursuant to the provisions of the Act.

160.   N.C. Gen. Stat. § 75-1.1 makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

161.    Defendant engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts and/or practices in or affecting commerce, through their advertisements and packaging of Class vehicles, by representing to Plaintiffs Jones and Garrett and members of the North Carolina Subclass that the Class Vehicles were safe and reliable with high-end safety features. Such pattern of conduct was uniform in nature with respect to the marketing and sale of the Class Vehicles.

162.    Defendant also knowingly concealed, suppressed and consciously omitted material facts from Plaintiffs Jones and Garrett and other members of the members of the North Carolina Subclass knowing that consumers would rely on the advertisements and Defendant's uniform representations concerning the Class Vehicles' high-end safety features and functionality when making purchasing decisions.

163.    Defendant's acts and omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

164.    Defendant's acts and omissions were and are unfair because they offend established public policy.

165.    Defendant's acts and omissions were and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

166.    Defendant's acts and omissions were and are unfair because they amount to an inequitable assertion of their power or position.

167.    Until the present, Defendant knowingly accepted the benefits of their deception and improper conduct in the form of profits from the increased sale of the Class Vehicles and/or paid repair services.

27

168.   As a proximate result of the above-described Consumer Protection Act violations, Plaintiffs Jones and Garrett and members of the North Carolina Subclass: (a) purchased and used Class Vehicles when they would not otherwise have done so; (b) suffered economic losses consisting of the Class Vehicle's cost of purchase or, alternatively, the diminished value of the Class Vehicles because of the windshield defect; (c) suffered and/or will suffer additional economic losses in purchasing another vehicle and/or out-of-pocket repair costs; and (d) suffered and will suffer additional economic losses incidental to the windshield defect.

169.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs Jones and Garrett and the members of the North Carolina Subclass have been damaged in an amount in excess of $10,000, and are entitled under N.C. Gen. Stat. § 75-16 to recover treble damages as well as attorneys' fees and costs.

## COUNT VII

**(Violation of Illinois Consumer Fraud and Deceptive Business Practice Act ("IFCA"), 815 ILCS 505 *et seq.*)**
**(On Behalf of Plaintiff Robbie and the Illinois Subclass)**

170.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

171.   Plaintiff Robbie asserts this cause of action on behalf of himself and the Illinois Subclass.

172.   Subaru has violated the ICFA's prohibition on deceptive conduct in that it used unconscionable business practices by failing to disclose, at the point of sale or otherwise, that the windshields in Class Vehicles are defective and pose a safety hazard.

173.   As a direct and proximate result of Subaru's conduct, Plaintiff Robbie and other members of the Illinois class have been harmed in that they purchased Class Vehicles they

otherwise would not have, paid more for Class Vehicles than they otherwise would, paid for windshield diagnoses, repairs, and replacements, towing, and/or rental cars, and are left with Class Vehicles of diminished value and utility because of the Defect.  Meanwhile, Subaru has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

174.    Plaintiff Robbie seeks damages and appropriate equitable relief, including an order requiring Subaru to adequately disclose and repair the windshield Defect, and an order enjoining Subaru from incorporating the defective windshield into its vehicles in the future.

175.    Based on the foregoing, Plaintiff Robbie and the Illinois Subclass are entitled to all remedies available pursuant to the IFCA, including refunds, actual damages, liquidated damages, punitive damages, attorney fees and other reasonable costs.  Plaintiff Robbie and the Illinois Subclass also request that the Court award equitable relief, including an order requiring Subaru to adequately disclose and repair the windshield Defect and an order enjoining Subaru from incorporating the defective windshield into its vehicles in the future.

## COUNT VIII

**(Unfair Acts and Practices in Violation of Illinois Consumer Fraud and Deceptive Business Practice Act ("IFCA"), 815 ILCS 505 *et seq.*)**
**(On Behalf of Plaintiff Robbie and the Illinois Subclass)**

176.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

177.    Plaintiff Robbie asserts this cause of action on behalf of himself and the Illinois Subclass.

178.    As alleged more fully herein, Subaru has violated Illinois' prohibition on unfair conduct because its acts, omissions, policies, and course of conduct: (1) offend public policy; (2)

29

are immoral, unethical, oppressive, and unscrupulous; (3) cause substantial injury to consumers in violation of the ICFA. Its unfair business practices include failing to disclose, at the point of sale or otherwise, that the windshield in Class Vehicles is defective and poses a safety hazard.

179.   As a direct and proximate result of Subaru's conduct, Plaintiff Robbie and other members of the Illinois Subclass have been harmed in that they purchased Class Vehicles they otherwise would not have, paid more for Class Vehicles than they otherwise would, paid for windshield diagnoses, repairs, and replacements, towing, and/or rental cars, and are left with Class Vehicles of diminished value and utility because of the Defect. Meanwhile, Subaru has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

180.   Plaintiff Robbie seeks damages and appropriate equitable relief, including an order requiring Subaru to adequately disclose and repair the windshield defect, and an order enjoining Subaru from incorporating the defective windshield into its vehicles in the future.

181.   Based on the foregoing, Plaintiff Robbie and the Illinois Subclass are entitled to all remedies available pursuant to the IFCA, including refunds, actual damages, liquidated damages, punitive damages, attorney fees and other reasonable costs. Plaintiff Robbie and the Illinois Subclass also request that the Court award equitable relief, including an order requiring Subaru to adequately disclose and repair the windshield defect and an order enjoining Subaru from incorporating the defective windshield into its vehicles in the future.

## COUNT IX

**(Breach of the Implied Warranty of Merchantability Under Illinois Law, 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212)**
**(On Behalf of Plaintiff Robbie and the Illinois Subclass)**

182.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

183.   Plaintiff Robbie asserts this cause of action on behalf of himself and the Illinois Subclass.

184.   The Class Vehicles are "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h)).

185.   A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind pursuant 810 Ill. Comp. Stat. §§ 28-2-314 and 28-12-212.

186.   As the manufacturer of the Class Vehicles who also sells them through its dealers, Subaru is a "merchant" within the meaning of Illinois Law and with respect to the Class Vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

187.   Subaru's implied warranty that the Class Vehicles were merchantable was part of the basis of the bargain between Subaru and Plaintiffs and members of the Illinois Subclass.

188.   The Class Vehicles are not merchantable because the windshields contain a dangerous safety defect in which they easily crack when common road debris comes into contact with the windshield, leading to rapid and extensive damage.  Accordingly, the windshields are not of fair average quality within the description and are not fit for the ordinary purposes for which such goods are used.

31

189.    Subaru was provided notice of these issues and defects through hundreds of NHTSA complaints, online forums discussing the issue, actual notice from its consumers, directly, and through its dealers.

190.    As a direct and proximate result of Subaru's breach of the warranties of merchantability, Plaintiff and members of the Illinois Subclass have been damaged in an amount to be proven at trial.

**COUNT X**

**(Violation of the Indiana Deceptive Consumer Sales Act)**
**(Ind. Code § 24-5-0.5-3)**
**(On Behalf of Plaintiff Funk and the Indiana Subclass)**

191.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

192.    Plaintiff Funk brings this action on behalf of himself and the Indiana State Subclass against Defendant.

193.    Subaru, Plaintiff Funk, and the Indiana State Subclass members are "persons" within the meaning of Ind. Code § 24-5-0.5-2(2) and a "supplier" within the meaning of Ind. Code § 24-5-.05-2(a)(3).

194.    Plaintiff Funk's and Indiana State Class members' purchases of the Class Vehicles are "consumer transactions" within the meaning of Ind. Code § 24-5-.05-2(a)(1).

195.    The Indiana Deceptive Consumer Sales Act ("Indiana DCSA prohibits a person from engaging in a "deceptive act," which includes representing: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the suppliers knows or should reasonably

32

now that it is now; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." Ind. Code § 24-5-0.5-3.

196.    In the course of their business, Defendant, through its agents, employees, and/or subsidiaries, violated the Indiana DCSA as detailed above.  Specifically, in developing and installing windshields in the Class Vehicles whose Defect was concealed from consumers, and in marketing, offering for sale, and selling the defective Class Vehicles, Defendant engaged in one or more of the following unfair or deceptive acts or practices as defined in Ind. Code § 24-5-0.5-3:

A.    Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

B.    Representing that the Class Vehicles are of a particular standard, quality and grade when they are not; and/or

C.    Advertising the Class Vehicles with the intent not to sell or lease them as advertised.

197.    Defendant's scheme and concealment of the true characteristics of the Class Vehicle windshields were material to Plaintiff Funk and the Indiana State Subclass, as Defendant intended.  Had they known the truth, Plaintiff Funk and the Indiana State Subclass would not have

33

purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

198.    Plaintiff Funk and the Indiana State Subclass had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose, because Defendant's safety system was extremely sophisticated technology. Plaintiff Funk and the Indiana State Subclass members did not, and could not, unravel Defendant's deception on their own.

199.    Defendant had an ongoing duty to Plaintiff Funk and the Indiana State Subclass to refrain from unfair and deceptive practices under the Indiana DCSA in the course of their business. Specifically, Defendant owed Plaintiff Funk and the Indiana State Subclass members a duty to disclose all the material facts concerning the windshield because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff and the Indiana State Subclass, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

200.    Plaintiff and Indiana State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

201.    Defendant's violations present a continuing risk to Plaintiff and the Indiana State Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

202.    Pursuant to Ind. Code § 24-5-0.5-4, Plaintiff Funk and the Indiana State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Indiana DCSA.

34

203.    Defendant was provided notice of the issues raised in this count and this Complaint by, among other things, the numerous complaints lodged against it, and the many individual notice letters sent by putative class members within a reasonable amount of time after the allegations of Class Vehicle defects became public.  Because Defendants failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Indiana State Class are entitled

## COUNT XI

### (Breach of Implied Warranty of Merchantability)
### (Ind. Code Ann. § 26-1-2-314)
### (15 U.S.C. §§ 2301–2312)
### (On Behalf of Plaintiff Funk and the Indiana Subclass)

204.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

205.    Plaintiff Funk brings this action on behalf of herself and the proposed Indiana State Class members against Subaru.  For purposes of this section, "Defendants" refers to Subaru of America, Inc.

206.    Defendants were at all relevant times "merchants" with respect to Class Vehicles under Ind. Code Ann. § 26-1-2-104(1).

207.    The Class Vehicles were at all relevant times "goods" within the meaning of Ind. Code Ann. § 26-1-2-105(1).

208.    Class Vehicles are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

209.    Plaintiff Funk and the proposed Indiana State Subclass members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

35

210.    Defendants are "warrantor[s]" and "supplier[s]," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

211.    Defendants provided Plaintiff Funk and the proposed Indiana State Subclass members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

212.    In their capacity as warrantors and by the conduct described herein, any attempt by Defendants to limit the implied warranties in a manner that would exclude coverage of the defective Class Vehicle windshields is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective windshields is void.

213.    All jurisdictional prerequisites have been satisfied herein.

214.    The Defects are a result of the windshields' design and are not the product of any manufacturing flaw or alteration in the windshields after they were manufactured.  In other words, the Defects existed at the point of design, manufacture, distribution, and sale.

215.    A warranty that the windshields were in merchantable condition and fit for the ordinary purpose for which windshields are used is implied by law pursuant to Ind. Code Ann. § 26-1-2-314. This implied warranty of merchantability is part of the basis for the bargain between Defendants, on the one hand, and Plaintiff Funk and the proposed class members, on the other.

216.    Notwithstanding the aforementioned duty, at the time of delivery, Defendants breached the implied warranty of merchantability because the windshields are not fit for the ordinary purposes for which such goods are used and failed to conform to the standard performance of like products used in the trade.  The windshields are prone to crack when operated as Defendants instructed and intended at the time Plaintiff Funk and the proposed Indiana Subclass members purchased the Class Vehicles.

217.    Defendants knew or should have known that the windshields posed a safety risk and were defective as designed and knew or should have known that selling the Class Vehicle to Plaintiff Funk and to the proposed Indiana Subclass members as marketed constituted a breach of the implied warranty of merchantability.

218.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Funk and the proposed class members bought the Class Vehicles without knowledge of the Defects or their serious safety risks.

219.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Funk and the proposed class members purchased unsafe products which could not be used for their intended purpose of safe driving in common road conditions.

220.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Funk and the proposed class members have suffered damages and did not receive the benefit of their bargain.

221.    Defendants were unjustly enriched by keeping the profits for their unsafe products for years before incurring any costs of repair, replacement, retrofit, or a recall.  Defendants were unjustly enriched by keeping the profits for their unsafe products while unjustly requiring Plaintiff Funk and the proposed class members to bear costs of repair and replacement, including the risk of injury or other harm.

222.    Warranty disclaimers are unconscionable where, as here, proposed class members have no meaningful choice in determining the terms of a warranty, there is a gross disparity of power between the proposed class members and the manufacturer, the terms of the warranty favor the manufacturer over the buyer, and the manufacturer had knowledge of the Defects.  Under Ind. Code Ann. § 26-1-2-316(2), warranty disclaimers are unenforceable where, as here, the terms are

37

inconspicuous.  Finally, it would be unreasonable under Ind. Code Ann. § 26-1-2-316(1) to apply an implied warranty limitation when no reasonable consumer would be aware of that limitation prior to purchase, particularly because Defendants never required consumers to acknowledge acceptance or receipt of the purported limitation on warranties.

223.   Defendant's conduct as described herein, including Defendant's knowledge of the defective windshields and its action, and inaction, in the face of that knowledge, has failed to comply with its obligations under their written and implied promises, warranties, and representations.

224.   Defendant's breaches of the implied warranty of merchantability damaged Plaintiff Funk and the proposed Indiana State Subclass in an amount to be proven at trial.  Among other things, the market price of the product that Plaintiff Funk and the proposed Indiana State Subclass members actually paid for (i.e., vehicles that could be used safely in common road conditions) is higher than the market price of the product that Defendants provided (i.e., vehicles that can only be used on roads lacking common road debris like pebbles or gravel).  Additionally, Plaintiff Funk and the proposed class members is entitled to revoke her acceptance of the Class Vehicle, obtain damages and equitable relief, and obtain attorney's fees and costs pursuant to 15 U.S.C. § 2310.

225.   Plaintiff Funk and proposed class members is also entitled to damages under Ind. Code § 26-1-2-714.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendant as follows:

      a.   For an order certifying the proposed Classes, appointing Plaintiffs as the Representative of the Classes, and appointing the law firms representing Plaintiffs as counsel for the Classes;

b. For an order awarding Plaintiffs and the members of the classes actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

c. For a declaration that the Class Vehicles are defective, that the remedial work necessary to correct the Defect is covered by the warranty, and that the warranty fails of its essential purpose;

d. For compensatory damages, restitution, and/or refund of all funds acquired by Defendant from Plaintiff and Class members as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial;

e. For punitive damages;

f. Payment of costs and expenses of suit herein incurred;

g. Both pre-and post-judgment interest on any amounts awarded;

h. Payment of reasonable attorneys' fees and expert fees, and;

i. Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury.


Dated: March 16, 2020                    /s/ Daniel C. Levin
                                         Daniel C. Levin
                                         Michael M. Weinkowitz
                                         Charles E. Schaffer
                                         Nicholas J. Elia
                                         LEVIN SEDRAN BERMAN LLP
                                         510 Walnut Street, Suite 500
                                         Philadelphia, PA 19106
                                         Phone: (215) 592-1500
                                         Fax: (215) 592-4663
                                         Email: dlevin@lfsblaw.com
                                                mweinkowitz@lfsblaw.com
                                                cschaffer@lfsblaw.com
                                                nelia@lfsblaw.com